Paul B. Mengedoth (018507)
MENGEDOTH LAW PLLC
20909 N. 90th Place, Suite 211
Scottsdale, AZ 85255
Tel: (480) 778-9100
Fax: (480) 778-9101
E-mail:  paul@mengedothlaw.com

Attorney for Plaintiff Ilene Modica

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| ILENE MODICA, an individual<br><br>Plaintiff,<br><br>v.<br><br>AMERICAN SUZUKI FINANCIAL SERVICES COMPANY LLC d/b/a AMERICAN SUZUKI FINANCIAL SERVICES, a Delaware corporation, and EQUIFAX INFORMATION SERVICES, LLC, a Georgia Corporation,<br><br>Defendants. | No. _____<br><br>**COMPLAINT**<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Ilene Modica (hereinafter "Plaintiff Modica"), by and through undersigned, and for her cause of action against Defendant American Suzuki Financial Services Company LLC d/b/a American Suzuki Financial Services (hereinafter "American Suzuki" or "ASFS") and Defendant Equifax Information Services, LLC, (hereinafter "Equifax") states as follows:

### I.    PRELIMINARY STATEMENT

1.     Mrs. Modica brings this second case for willful and negligent violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq*. ("FCRA"), against Defendants

American Suzuki and Equifax for reinserting and again reporting false and derogatory charge-off information pertaining to a certain automobile lease account that was already once the subject of Mrs. Modica's prior lawsuit against both of them in this court and settled prior to trial: *Modica v. American Suzuki Financial Services*, *et al*., 2:11-cv-02183-DGC (the "First Lawsuit").

2.     Mrs. Modica submitted no fewer than (6) prior written disputes to Defendant American Suzuki and credit reporting agencies about the false information before she filed the First Lawsuit.

3.     Just days after Mrs. Modica entered into a confidential settlement with American Suzuki of all her then-existing claims in the First Lawsuit, American Suzuki secretly instructed Defendant Equifax to reinsert the exact same false, derogatory, and inaccurate charge-off information about Mrs. Modica to Defendant Equifax that it had instructed Equifax to remove from her credit file.

4.     Nearly simultaneously, and acting ostensibly through its affiliate Nuvell Credit Corporation, Defendant American Suzuki also secretly instructed Trans Union to insert virtually the same false, derogatory and inaccurate identical charge-off information it had previously instructed Trans Union to remove.

5.     Not to be outdone by Defendant American Suzuki, Defendant Equifax, who itself had entered into a separate confidential settlement with Mrs. Modica months earlier in the First Lawsuit, removed and reinserted the false, inaccurate and derogatory charge-off account, reported it, and then after it received Mrs. Modica's again notice of dispute in June of 2013, Defendant Equifax again simply parroted Defendant American Suzuki's verification the account was accurate without any or a reasonable reinvestigation.

6.     Mrs. Modica does not her reassert her claims she alleged in the First Lawsuit against either Defendant prior to the execution of the respective and separate confidential settlement agreements.  Instead, Mrs. Modica brings entirely new claims

2

based on the same disputed account(s) for the Defendants' conduct after the execution of those respective confidential settlements.

## II. PARTIES, JURISDICTION AND VENUE

7.     Plaintiff Ilene Modica is an adult resident of Maricopa County, Arizona and a "consumer" as that word is defined by 15 U.S.C. § 1681a(C).

8.     Defendant American Suzuki is a Delaware corporation registered to do business and regularly and systematically doing business in the State of Arizona, Maricopa County, and may be served with process upon CT Corporation System, 2394 E Camelback Road, Phoenix, AZ 85016.

9.     Defendant American Suzuki furnishes information to consumer reporting agencies about consumers under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1691s-2.

10.     Defendant American Suzuki, at all times relevant hereto, was an affiliate of Nuvell Credit Corporation.

11.     Defendant Equifax Information Services LLC ("Equifax") is a Georgia corporation registered to do business and regularly and systematically doing business in the State of Arizona, Maricopa County, and may be served with process upon Corporation Service Company, its registered agent for service of process, at 2338 W Royal Palm Road, Suite J, Phoenix, AZ, 85021. Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

12.     This court has jurisdiction under 15 U.S.C. § 1681p.

## III.  FACTUAL BACKGROUND

13.     On or about December 8, 2005, Mrs. Modica entered into a certain agreement for the lease of a Suzuki Grand Vitara motor vehicle with Defendant American Suzuki under which she and her daughter, Jacklyn, were co-leasees (the "Lease" or "Lease Agreement").

14.     The Lease was financed under the terms of an installment account with American Suzuki ("Lease Account").

3

15.     Mrs. Modica and her daughter Jacklyn intended Jacklyn use the vehicle exclusively for Jacklyn's personal use, which she did through the term of the Lease.

16.     On or about July 1, 2008, near the end of the term of the Lease and Lease Account, Jacklyn Modica solely entered into an agreement with Defendant American Suzuki to extend the term of the Lease Agreement and Lease Account for one month and several months thereafter, replacing Mrs. Modica as the sole "Lessor" under the Lease and Lease Account.

17.     Thereafter, from August through December of 2009, Jacklyn Modica and Defendant American Suzuki extended the lease term each month with the same regularly scheduled monthly installment payment due, which Jacklyn Modica paid until she returned the vehicle to the Avondale Suzuki dealership in early January of 2009.

18.      At the time the vehicle was returned to the dealership in January of 2009 it was in satisfactory condition under the terms of the Lease Agreement, and according the ASFS itself, no amounts were actually due and owing to American Suzuki in January of 2009.

19.     On or about October 5, 2009, Jacklyn Modica received a collection letter from Accounts Receivable Management ("ARM") in which ARM claimed it represented Defendant American Suzuki and that she owed Defendant American Suzuki $3,431.51.

20.     Thereafter, Plaintiff Ilene Modica also received calls at work from debt collector ARM and others asserting that she owed such amount and other various amounts to Defendant American Suzuki.

21.     Plaintiff Modica and her daughter disputed to all collection agencies that she owed this amount or any other and demanded verification of the alleged debt.

22.     By December of 2009, Defendant American Suzuki reported to TransUnion, Equifax, and/or Experian that Plaintiff Modica on the American Suzuki Account owed $0.00, the account was closed on 6/2008 and the account status was "current" and had "paid or was paying as agreed."

23.     On June 18, 2010, Plaintiff Modica wrote and mailed her <u>first dispute letter</u> to Trans Union, copying Syncom and ARM, disputing any amounts allegedly due to Defendant American Suzuki, demanding an investigation and the removal of all inaccurate information on her credit report, including the identification of Synergetic Communication, Inc. and ARM entries as collections.

24.     Plaintiff Modica received no response from Trans Union to her June 18, 2010 first written dispute within thirty days.

25.     On August 5, 2010, Plaintiff Modica wrote and mailed a <u>second dispute letter</u> to Trans Union, again copying Syncom and ARM, again disputing the identification of Synergetic Communication, Inc. and ARM entries as collections.

26.     Trans Union contacted Defendant American Suzuki and informed it Plaintiff Modica disputed the American Suzuki Account, stating she claims she was "[n]ot liable for the acct (i e ex-spouse business)"

27.     Defendant American Suzuki responded to and verified to Trans Union, without any or a reasonable investigation, that the disputed information should remain.

28.     On or about August 14, 2010, Trans Union responded to Plaintiff Modica and stated its reinvestigation of her dispute was complete and the results would be that a zero balance was due on a high balance of $5,644.00, the account status as "Paid or Paying as Agreed," the account was closed on 6/2008 and that "DISPUTE RESLVD-CUST DISAGREES."

29.     On September 15, 2010, Plaintiff Modica wrote and mailed a <u>third dispute letter</u> to TransUnion, copying Defendant American Suzuki, Syncom and ARM, again disputing the identification of Synergetic Communication, Inc. and ARM entries as collections.

30.     Trans Union contacted Defendant American Suzuki and informed it Plaintiff Modica disputed the American Suzuki Account, simply stating that Plaintiff Modica "[c]laims inaccurate information."

31.     Defendant American Suzuki then responded to and verified to TransUnion, without any or a reasonable investigation, the disputed information should remain. This time, instead of indicating the account was "paid" or "paying as agreed," ASFS further told Defendant TransUnion to report the American Suzuki Account as an unpaid balance reported as a loss (charge-off).

32.     On or about September 15, 2010, a third debt collection agency, Tate & Kirlin Associates, sent Plaintiff Modica a letter attempting to collect on an American Suzuki Account in the amount of $3,228.41.

33.     On or about September 24, 2010, Trans Union then mailed Plaintiff Modica and stated its reinvestigation of her dispute was complete, with no indication the Syncom or ARM information would be deleted, and advising that the American Suzuki Account was now stating a zero balance was due, the account status was changed to "Payment After Charge Off/Collection," and that "DISPUTE RESLVD-CUST DISAGREES."

34.     On November 19, 2010 Plaintiff Modica wrote and mailed a fourth dispute letter to Trans Union, copying Defendant American Suzuki, disputing any amounts allegedly due to Defendant American Suzuki, demanding an investigation and the removal of all inaccurate information on her credit report, including the identification of Synergetic Communication, Inc. and ARM entries as collections.

35.     Trans Union contacted Defendant American Suzuki and informed it Plaintiff Modica disputed the American Suzuki Account, stating that Plaintiff Modica "[c]laims pd orig cred before coll stat or pd before chg off."

36.     Defendant American Suzuki then responded to and verified to TransUnion, without any or a reasonable investigation, the disputed information should remain. Defendant American Suzuki told TransUnion to report the American Suzuki Account as unpaid balance reported as a loss (charge-off).

37.     On December 17, 2010, Trans Union mailed Plaintiff Modica and stated its reinvestigation of her dispute of the American Suzuki Account was complete, with no

indication the Syncom or ARM information would be deleted, and advising the American Suzuki Account remained a derogatory account, stating a zero balance was due, the account status was "Payment After Charge Off/Collection," and that "DISPUTE RESLVD-CUST DISAGREES."

38.     Defendant American Suzuki then sent Plaintiff Modica a letter dated January 5, 2011 in which it simply enclosed a copy of the Lease Agreement, falsely indicating that is what Plaintiff Modica requested.

39.     On January 12, 2011, Plaintiff Modica sent Defendant American Suzuki a letter demanding it provide evidence that she owed it any amount, which Defendant American Suzuki ignored.

40.     On or about July 12, 2011, Plaintiff Modica wrote and mailed a <u>fifth dispute letter</u> to Trans Union, copying Defendant American Suzuki, disputing any amounts allegedly due to Defendant American Suzuki, demanding an investigation and the removal of all inaccurate information on her credit report, including the identification of Synergetic Communication, Inc. and ARM entries as collections.

41.     Trans Union contacted Defendant American Suzuki and informed it that Plaintiff Modica disputed the American Suzuki Account, stating that Plaintiff Modica "[d]isputes present/prev Acct Status."

42.     Defendant American Suzuki then responded to and verified to Trans Union, without any or a reasonable investigation, the disputed information should remain. Defendant American Suzuki told Trans Union to report the American Suzuki Account as unpaid balance reported as a loss (charge-off).

43.     On July 27, 2011, Trans Union mailed Plaintiff Modica and stated its reinvestigation of her dispute of the American Suzuki Account was complete, with no indication the Syncom or ARM information would be deleted, and advising that American Suzuki Account remained a derogatory account, stating a zero balance was due, the account status was "Payment After Charge Off/Collection," and that "DISPUTE RESLVD-CUST DISAGREES."

7

44.     On or about August 12, 2011, Plaintiff Modica wrote and mailed a <u>sixth</u> <u>dispute letter</u> to Trans Union copying Defendant American Suzuki, disputing any amounts allegedly due to Defendant American Suzuki, demanding an investigation and the removal of all inaccurate information on her credit report, including the identification of Synergetic Communication, Inc. and ARM entries as collections.

45.     On or about July 12, 2011 and again on August 12, 2011, Plaintiff Modica sent written disputes to Defendant Equifax disputing American Suzuki Account and pleaded to have the inaccurate and derogatory information appearing on her Equifax credit report and pertaining to the American Suzuki Account deleted.

46.     Defendant Equifax contacted Defendant American Suzuki in response to Plaintiff's July 12, 2011 and August 12, 2011 dispute letters and informed Defendant American Suzuki that Plaintiff Modica disputed the validity of and derogatory information reporting for the American Suzuki Account.

47.     Defendant American Suzuki both times responded to and informed Defendant Equifax, without any or a reasonable investigation, that the American Suzuki Account was valid and should continue to report as "Charge-Off/Consumer Disputes After Resolution.

48.     Defendant Equifax simply parroted the response provided by Defendant American Suzuki without performing a reasonable investigation of the information appearing on Plaintiff's Equifax credit report.

49.     On or about August 24, 2011, Defendant American Suzuki simply again mailed Plaintiff a copy of the Lease Agreement and a form cover letter falsely stating that Plaintiff had merely requested a "Copy of Contact."

50.     Plaintiff thereafter filed suit against American Suzuki, Equifax and Tran Union for their respective violations of the FCRA.

51.     On June 3, 2012, Plaintiff entered into a confidential settlement with Trans Union, resolving all her then existing claims against Defendant Equifax in the First Lawsuit.

52.     Prior to the dismissal of Mrs. Modica's claims against Trans Union in the First Lawsuit, Trans Union changed its database for Mrs. Modica's credit file to indicate the ASFS Account was current and paid/paying as agreed with a single 30 day late – eliminating its previously reporting of the ASFS account as a charge-off.

53.     On August 15, 2012, Plaintiff and Defendant Equifax entered into a confidential settlement, resolving all her then existing claims against Defendant Equifax in the First Lawsuit.

54.     Prior to the dismissal of Mrs. Modica's claims against Equifax in the First Lawsuit, Defendant Equifax changed its database for Mrs. Modica's credit file to indicate the ASFS Account was current and paid/paying as agreed with a single 30 day late – eliminating entirely its reporting the ASFS Account as a charge-off.

55.     On March 26, 2013, Plaintiff Modica and Defendant American Suzuki entered into a confidential settlement in the First Lawsuit, resolving all her then-existing claims against Defendant American Suzuki in the First Lawsuit.

56.     Thereafter, Defendant American Suzuki notified Defendant Equifax and Trans Union to indicate the ASFS Account was current and paid/paying as agreed with a single 30 day late – eliminating entirely its pervious reporting of the ASFS Account as a charge-off.

57.     Defendant American Suzuki, however, immediately afterwards re-reported the ASFS Account to Defendant Equifax as a charge-off and, by and through its affiliate Nuvell Credit Corporation, instructed Trans Union to report the account for the Lease as a charge-off.

58.     Mrs. Modica, unaware Defendants had re-inserted the false, derogatory, and inaccurate charge-off information into her credit files, pulled her Equifax and Trans Union credit reports in May of 2013 in anticipation of obtaining new mortgage financing believing all her issues in the First Lawsuit were behind her.

59.     However, Mrs. Modica learned upon pulling her May 2013 Equifax and Trans Union reports that Equifax was now double-reporting the ASFS Account as a

charge-off and that Trans Union was reporting the account for the Lease as a charge-off but with the account allegedly belonging Defendant American Suzuki's affiliate - Nuvell Credit Corporation.

60.    In June of 2013, Mrs. Modica immediately mailed separate written notices to both Equifax and Trans Union and advised each that she disputed the re-reporting of the ASFS Account(s) as a charge-off or that she ever had any dealings with Nuvell Credit Corporation.

61.    Upon information and belief, Trans Union removed the entire Nuvell Credit Corporation trade line as a charge-off without notifying Defendant American Suzuki of the dispute within thirty (30) days of its receipt of her June 2013 dispute.

62.    Upon receipt of her June 2013 dispute, Defendant Equifax notified Defendant American Suzuki of Mrs. Modica's again dispute of the Lease Account as a charge-off.

63.    Upon receipt of Mrs. Modica's June 2013 dispute, Defendant Equifax failed to relay all relevant information about her again dispute to Defendant American Suzuki.

64.    Alternatively to the two preceding paragraphs, Defendant Equifax did not notify Defendant American Suzuki of Mrs. Modica's June 2013 dispute.

65.    Upon receipt of notice of the dispute from Equifax, Defendant American Suzuki did not perform any or a reasonable investigation of all relevant information pertaining to Mrs. Modica's June 2013 dispute, and simply verified the false, inaccurate and seriously derogatory charge-off information pertaining to the ASFS Account to Defendant Equifax.

66.    Defendant Equifax failed to conduct any or a reasonable reinvestigation of Mrs. Modica's June 2013 dispute.   Defendant Equifax simply parroted the information it received back from Defendant American Suzuki.

67.    Defendant American Suzuki and Defendant Equifax re-inserted the inaccurate, false and derogatory information pertaining to the ASFS Account into Mrs. Modica's credit file, Defendant American Suzuki failed to certify the information was

accurate before it was reinserted, and both failed to ever notify Mrs. Modica that either had or would reinsert the information.

68. Defendants' respective actions above and failures to comply with the FCRA damaged Plaintiff after the respective settlements of her claims in the First Lawsuit, including but not limited to, credit denials, lost credit opportunities, publication of false information about her to third-parties, emotional distress, anxiety, anger and loss of sleep.

## IV.  CAUSES OF ACTION
### COUNT I
### (Mrs. Modica v. American Suzuki)
### WILLFUL AND/OR NEGLIGENT VIOLATIONS OF THE FEDERAL FAIR CREDIT REPORTING ACT

69. Plaintiff incorporates as if fully set out herein all the preceding paragraphs.

70. Defendant American Suzuki failed to perform any or a reasonable reinvestigation of the Plaintiff Modica's June 2013 disputes and "verified" to Equifax that the American Suzuki Account with all its false, inaccurate, and derogatory information should continue to appear in the Plaintiff's credit files.

71. Defendant American Suzuki, after having instructed Defendant Equifax to remove the false and inaccurate charge-off information pertaining to the ASFS Account in Plaintiff's credit file, then instructed Defendant Equifax to reinsert the false and inaccurate information and do so without notice to Plaintiff in violation of 15 U.S.C. § 1681s-2(b)(1)(E)(iii).

72. Defendant American Suzuki, after having instructed Trans Union to modify the ASFS Account to remove the false and inaccurate charge-off information in Plaintiff's credit file, thereafter instructed Trans Union to report virtually identical false and inaccurate information, this time identifying it as a trade line of its affiliate Nuvell Credit Corporation in violation of 15 U.S.C. § 1681s-2(b)(1)(E).

73. Defendant American Suzuki's actions set forth above constitute negligent and/or willful violations of the Fair Credit Reporting Act.  15 U.S.C. §1681s-2(b).

74.     Pursuant to 15 U.S.C. § 1681o of the Fair Credit Reporting Act, Defendant American Suzuki's actions in negligently violating the Fair Credit Reporting Act entitle the Plaintiff to recovery of her actual damages as well as attorneys' fees and costs.

75.     In addition, Defendant American Suzuki's actions in willfully violating the Fair Credit Reporting Act entitle the Plaintiff to the recovery of her actual damages, punitive damages, attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

**COUNT II**
**(Mrs. Modica v. Equifax)**
**WILLFUL AND/OR NEGLIGENT VIOLATIONS OF THE FEDERAL FAIR CREDIT REPORTING ACT**

76.     Plaintiff incorporates as if fully set out herein all the preceding paragraphs.

77.     15 U.S.C. § 1681e(b) requires Defendant Equifax to follow reasonable procedures to assure maximum possible accuracy of the Plaintiff's credit reports. Defendant Equifax violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the Plaintiff's credit history after its settlement of the First Lawsuit with Plaintiff.

78.     Defendant Equifax failed to perform any or a reasonable reinvestigation of Mrs. Modica's June 2013 dispute, failed to relay all relevant information to Defendant American Suzuki, and then reported that the American Suzuki Account with all the false, inaccurate, and derogatory charge-off information should continue to appear in Plaintiff's credit files.

79.     Defendant Equifax reinserted the false, inaccurate and derogatory ASFS Account and then reported the same false and inaccurate information after it settled the First Lawsuit, and did so without a certification from Defendant American Suzuki the information was accurate and without notice to Plaintiff it was reinserted in violation of 15 U.S.C. § 1681i(a)(5)(B).

80.     Defendant Equifax failed to maintain reasonable procedures to prevent its reappearance of the American Suzuki Account as a charge-off account in violation of 15 U.S.C. § 1681i(a)(5)(C).

81.    Defendant Equifax's actions set forth above were negligent and/or willful violations of the Fair Credit Reporting Act.

82.    Pursuant to 15 U.S.C. § 1681o of the Fair Credit Reporting Act, Defendant Equifax's actions in negligently violating the Fair Credit Reporting Act entitle the Plaintiff to recovery of her actual damages as well as attorneys' fees and costs.

83.    In addition, Defendants Equifax's actions in willfully violating the Fair Credit Reporting Act entitle the Plaintiff to the recovery of her actual damages, punitive damages, attorneys' fees and costs, pursuant to 15 U.S.C. § 1681n.

## V.    DEMAND FOR JURY TRIAL

84.    Plaintiff demands a trial by jury as to all issues so triable.

DATED the 18th day of July, 2014.          **MENGEDOTH LAW PLLC**


                                              _/s/ Paul B. Mengedoth
                                              Paul B. Mengedoth
                                              20909 N. 90th Place, Suite 211
                                              Scottsdale, AZ 85255

                                              Attorney for Plaintiff Ilene Modica